# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| ELIZA LABS, INC., a corporation, and SHAW WALTERS, an individual, | Case No. 4:25-cv-01208-P |
| Plaintiffs, | |
| v. | **PLAINTIFFS ELIZA LABS, INC. AND SHAW WALTERS'S MOTION TO TRANSFER** |
| X CORP. (fka TWITTER), a corporation, X.AI CORP., a Nevada corporation, and X.AI LLC, a Nevada limited liability company, | |
| Defendants. | |

## PLAINTIFFS ELIZA LABS, INC. AND SHAW WALTERS'S MOTION TO TRANSFER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     Brief Summary ........................................................................................................ 1

II.    Relevant Facts ...................................................................................................... 2

    A.     Defendant X.AI LLC Is Not Registered to Do Business in Texas. ....................... 2

    B.     X Is In The Western—Not Northern—District of Texas and Engineering
        Remains In California. ......................................................................................... 2

    C.     X.AI LLC and X.AI Corp Are Not Parties to X's Terms of Service. ................... 3

        1.     Plaintiff Shaw Walters Does Not Consent to Sue His Company's
            Competitors in Texas and Texas Lacks Personal Jurisdiction Over
            Walters. ...................................................................................................... 4

        2.     No Relevant Witnesses—Including Defendants'—Are from Texas
            Or Will Willingly Appear And Some Of Plaintiffs' Key
            Documents Are Stored Locally In San Francisco. ..................................... 4

        3.     The San Francisco Bay Area Is The Hotbed For AI Investment,
            Research, and Development. ...................................................................... 5

III.   Legal Analysis ...................................................................................................... 7

    A.     Plaintiffs Could Not Have Filed This Suit In Northern District Of Texas
        Without Waiving Personal Jurisdiction And Suing An Unregistered
        Business. ............................................................................................................. 7

    B.     Under the Volkswagen Factors, This Case Should Be Transferred Back to
        Northern District of California. ........................................................................... 8

    C.     Private Factors Support Transfer. ...................................................................... 10

        1.     The relative ease of access to sources of proof favors transfer. .............. 10

        2.     The availability of compulsory process favors transfer. .......................... 11

        3.     The cost of attendance for willing witnesses favors transfer. .................. 13

        4.     All other practical problems favor transfer. ............................................. 14

    D.     Public Factors Support Transfer. ...................................................................... 15

        1.     Judicial economy and court congestion favors transfer. .......................... 15

        2.     Local interests favor transfer. .................................................................. 16

    E.     Assuming A Valid Forum Selection Clause Exists (It Does Not, As
        Explained *Infra*, Section G), Courts Must Consider the Public Factors. ............. 18

    F.     The Closely Related Doctrine Does Not Apply Here Because It Is Not
        Foreseeable That Plaintiffs, By Using X's Platform, Would Be Required
        To Bring Claims Against Their Direct California-Based Competitor In
        Texas. ................................................................................................................ 18

    G.     X's Forum Selection Clause Is Unreasonable And Therefore Invalid. ................. 20

i

I.    CONCLUSION ................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*All. Health Grp., LLC v. Bridging Health Options, LLC,*
   553 F.3d 397 (5th Cir. 2008) ................................................................................20

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,*
   571 U.S. 49 (2013) ...............................................................................................18

*Balthasar Online, Inc. v. Network Solutions, LLC,*
   654 F. Supp. 2d 546 (E.D. Tex. 2009) ..................................................................8

*Barnett v. DynCorp Int'l, L.L.C.,*
   831 F.3d 296 (5th Cir. 2016) ................................................................................20

*Baton v. Ledger SAS,*
   740 F. Supp. 3d 847 (N.D. Cal. 2024)..................................................................23

*BNSF Ry. Co. v. OOCL (USA), Inc.,*
   667 F. Supp. 2d 703 (N.D. Tex. 2009) ...............................................................7, 8

*Bridas S.A.P.I.C. v. Gov't of Turkm.,*
   345 F.3d 347 (5th Cir. 2003) .............................................................................19, 20

*Carefree Vacations, Inc. v. Brunner,*
   615 F. Supp. 211 (W.D. Tenn. 1985) ...................................................................21

*In re Chamber of Com. of United States of Am.,*
   105 F.4th at 311 ...........................................................................................15, 16, 17

*In re Clarke,*
   94 F.4th 502 (5th Cir. 2024).........................................................................15, 16, 17

*Curtis v. Galakatos,*
   19 F.4th 41 (1st Cir. 2021) ...................................................................................12

*Def. Distrib. v. Bruck,*
   30 F.4th 414 (5th Cir. 2022)..................................................................................14

*Farrell Lines Inc. v. Columbus Cello-Poly Corp.,*
   32 F. Supp.2d 118 (S.D. N.Y. 1997) ....................................................................21

*Firexo, Inc. v. Firexo Grp. Ltd.,*
   99 F.4th 304 (6th Cir. 2024) .................................................................................19

*Franlink Inc. v. BACE Servs., Inc.*,
  50 F.4th 432 (5th Cir. 2022) ...................................................................................18, 19

*Harmon v. Dyncorp Intern., Inc.*,
  No. 1:13CV1597(LMB/TRJ), 2015 WL 518594 (E.D. Va. Feb. 6, 2015)............................22

*Haynsworth v. The Corporation*,
  121 F.3d 956 (5th Cir. 1997) ....................................................................................20, 21

*Hefferan v. Ethicon Endo-Surgery Inc.*,
  828 F.3d (6th Cir. 2016) ...................................................................................................12

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) ...........................................................................................................8

*In re Horseshoe Entertainment*,
  337 F.3d 429 (5th Cir. 2003) ..............................................................................................7

*Hugel v. Corp. of Lloyd's*,
  999 F.2d 206 (7th Cir. 1993) ............................................................................................18

*Kirsch Research and Development, LLC v. GAF Materials LLC*,
  2020 WL 5815911 (N.D. Tex. Sept. 30, 2020) .................................................................8

*Koehring Co. v. Hyde Constr. Co.*,
  324 F.2d 295 (5th Cir. 1963) ............................................................................................16

*LeBlanc v. C.R. England, Inc.*,
  961 F. Supp. 2d 819 (N.D. Tex. 2013) ..............................................................................18

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) .............................................................................................................24

*N.Z. v. Fenix International Ltd.*,
  2025 WL 1122493 (C.D. Cal. Apr. 9, 2025) .....................................................................23

*PCL Civ. Constructors, Inc. v. Arch Ins. Co.*,
  979 F.3d 1070 (5th Cir. 2020) ..........................................................................................21

*In re Planned Parenthood Fed'n Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) .......................................................................................*passim*

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ...........................................................................9, 10, 11, 14

*Rolfe v. Network Funding LP*,
  No. 14–CV–9–BBC, 2014 WL 2006756 (W.D. Wis. May 16, 2014) ..................................20

*Sanchez v. Nitro Lift Technologies, L.L.C.*,
    91 F. Supp.3d 1218 (E.D. Okla. 2015) ................................................................21

*Savarirayan v. Brisolara*,
    46 F. App'x 226 (5th Cir. 2002) ............................................................................8

*Skyhawke Technologies, LLC v. Golftec ST LLC*,
    2024 WL 3469497 (S.D. Miss. Apr. 11, 2024) ...........................................21, 22

*Stellar Restoration Servs., LLC v. James Christopher Courtney*,
    533 F. Supp. 3d 394 (E.D. Tex. 2021) ..................................................................20

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ........................................................................*passim*

*Truinject Corp. v. Nestle Skin Health, S.A.*,
    No. 19-592-LPS-JLH, 2019 WL 6828984 (D. Del. Dec. 13, 2019) ....................19

*In re Volkswagen AG ("Volkswagen I")*,
    371 F.3d 201 (5th Cir. 2004) ................................................................................11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................*passim*

*Weber v. PACT XPP Technologies, AG*,
    811 F.3d 758 (5th Cir. 2016) ................................................................................20

**State Cases**

*Irsik & Doll Feed Serv's, Inc. v. Roberts Enterprises Investments, Inc.*,
    Case No. 6:16-1018-EFM-GEB, 2016 WL 3405175 (D. Kans. June 20, 2016) ....................21

*Rieder v. Woods*,
    603 S.W.3d 86 (Tex. 2020) ..................................................................................21

**Federal Statutes**

28 U.S.C.
    § 1391 ....................................................................................................................20
    § 1404(a) ........................................................................................................*passim*

**State Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ........................................................................23

Tex. Bus. & Com.
    § 15.04 *et seq.* .....................................................................................................23
    § 17.46 ..................................................................................................................23
    § 17.50 ..................................................................................................................23

Tex. Bus. Org. Code § 9.001 ........................................................................................................7

**Rules**

Fed. R. Civ. P.
   45(c)(3) ...............................................................................................................................11, 12
   45(c)(3)(A)(ii)....................................................................................................................11, 12

Plaintiffs Eliza Labs and founder Shaw Walters ("Plaintiffs") move to transfer to the Northern District of California and, in support thereof, respectfully show the Court as follows:

## I.     Brief Summary

Plaintiffs filed this case in Northern District of California because that is where Walters resides and Eliza is headquartered, and where most, if not all, of the events giving rise to this complaint took place. Defendants X.AI LLC, X.AI Corp., (the "X.AI Entities") and X Corp. (collectively, "Defendants") moved to transfer to this District on the basis of X's recently changed forum selection clause that X claims binds every user of X's platform to litigate here. The Northern District of California quickly granted Defendants' motion, having taken the forum selection clause at face value apparently without considering Plaintiffs' unrefuted evidence of X's forum shopping with which this Court is already familiar and has questioned previously.

On October 30, 2025, this Court expressed concerns about X bringing its disputes to the Northern District of Texas, a jurisdiction hundreds of miles from where any X affiliate is headquartered and disconnected from any evidence or witnesses or economic activity, and invited this motion. *See* Dkt. 65.

Plaintiffs now move this Court for a transfer back to the Northern District of California on several grounds. X's forum selection clause is invalid and, therefore, should be voided because (as this Court has previously observed) X is forum shopping for a district with which it has no contacts. Additionally, Defendant X.AI LLC is not registered to do business nor is it headquartered in Texas; without Texas contacts, Plaintiffs could not have filed suit against X.AI LLC here. Neither X.AI LLC nor X.AI Corp. is a signatory to—or third-party beneficiary of—X's forum selection clause, and concluding that these two direct competitors of Plaintiffs are sufficiently "closely related" to require all litigation be here violates Plaintiff Walters' due process because Walters has no contacts with Texas. Finally, the *Volkswagen* factors strongly support transfer back to the Northern District

of California. For all of these reasons and more explained herein, Plaintiffs respectfully submit that this case should be returned to the Northern District of California.

## II.   Relevant Facts

### A.   Defendant X.AI LLC Is Not Registered to Do Business in Texas.

Defendant X.AI LLC is a Nevada corporation with a principal place of business in Palo Alto, California; it is not registered to do business in Texas. *See* Declaration of Matt Miller ("Miller Decl."), ¶¶ 2–5.

### B.   X Is In The Western—Not Northern—District of Texas and Engineering Remains In California.

Defendant X is located in Bastrop, Texas, which is in the Western District of Texas, not this District. ECF 43-1 at 2; Miller Decl. ¶ 6 (printout from the California Secretary of State showing X's address is 865 FM 1209, Building 2, Bastrop, TX 78602); *id.* ¶ 7 (printout from U.S. District Court, Western District of Texas, showing that Austin Division serves Bastrop County and has an address of 501 West Fifth Street, Suite 1100 Austin, Texas 78701). X's Bastrop headquarters is roughly 25 miles from the Western District of Texas Federal Courthouse serving Bastrop County. Miller Decl. ¶ 10 (showing the distance from X's headquarters to the closest Western District of Texas Courthouse). X's Bastrop headquarters is roughly 200 miles from the Northern District of Texas serving Tarrant County.[1] *Id.* ¶ 11 (showing the distance from X's headquarters to this Courthouse).

Furthermore, on October 31, 2025, the owner of X and CEO of the X.AI Entities explained: "You know, I moved X's headquarters to Texas, to Austin, which Austin, by the way, is still quite liberal, as you know. **And then the X and X.AI headquarters are in Palo Alto, which is still**

---

[1] Tarrant County is in the Fort Worth Division of N.D. Texas. Miller Decl. ¶ 8, 9 (Fort Worth Division's address is 501 W 10th St, Fort Worth, TX 76102 in Tarrant County).

**California. The engineering headquarters in Palo Alto are just on Page Mill**." *See* Declaration of Shaw Walters ("Walters Decl.") ¶ 18 (emphasis added).

This statement indicates that the engineering department—the only department relevant to this action—for both X and X.AI is in Palo Alto, California.[2] *Id.*

### C.    X.AI LLC and X.AI Corp Are Not Parties to X's Terms of Service.

No version of X's Terms of Service and Developer Agreement relate at all to the X.AI Entities: "X.AI [LLC] is a separate company from X Corp." ECF 39 ¶ 5. The X.AI Entities do not claim to be third-party beneficiaries of X's Terms of Service. *See* ECF 42; ECF 43. And Plaintiffs have no contractual relationship with the X.AI Entities; rather, Plaintiffs and the X.AI Entities are direct competitors. ECF 21 (Grok and Eliza Lab's software both provide AI Agents that may operate on X's platform); Walters Decl. ¶ 13.

Plaintiffs have not and will never willingly give up rights to pursue claims against the X.AI Entities, their direct competitor. Walters Decl. ¶ 13. X never conditioned Plaintiffs' use of X's platform on giving up legal rights related to any and all entities remotely affiliated to X, nor does any version of the X Terms of Service even hint at such a concept. *Id.* ¶ 14. To be sure, Defendants do not point to any such language, and Plaintiffs would not have agreed to such a requirement. *Id.* ¶ 15. Therefore, Defendants' expansive position that the forum selection clause in X's Terms shields all of *the X.AI Entities* from suit in California is wrong as a matter of law, and can be rejected by this Court before it even considers the invalidity of the clause itself.

No evidence exists of a "close relationship" between X and the X.AI Entities suggesting they could shoehorn Plaintiffs' claims against the X.AI Entities into the X Terms of Service. *Id.* ¶

---

[2] What this statement also implies is that because X leadership viewed Austin as politically liberal, they assumed a different, perhaps less liberal, jurisdiction would be more favorable, which is the definition of forum shopping.

16. As Defendants' own declarant explains: "X.AI is a separate company from X Corp." ECF 39 ¶ 5; *see also* ECF 50 at 10.

> **1.    Plaintiff Shaw Walters Does Not Consent to Sue His Company's Competitors in Texas and Texas Lacks Personal Jurisdiction Over Walters.**

Walters is a California resident. Walters Decl. ¶ 6. None of the events at issue took place in Texas. ECF 21; Walters Decl. ¶ 8. Walters has not been to Texas or the Northern District of Texas more than a few times for short trips. Walters Decl. ¶ 7.

Walters did not agree to sue his company's direct competitors (the X.AI Entities) in a location where he neither works nor resides. *Id.* ¶ 15. Walters does not now consent to suing his company's direct competitors in the Northern District of Texas. *Id.*

> **2.    No Relevant Witnesses—Including Defendants'—Are from Texas Or Will Willingly Appear And Some Of Plaintiffs' Key Documents Are Stored Locally In San Francisco.**

Only one of Defendants' declarants supporting any of Defendants' papers resides in Texas. *Compare* ECF 43, Declaration of Megan Scolari, Legal Program Manager at X Corp ("Executed on October 1, 2025 in San Francisco, California."); ECF 39, Declaration of Ebby Amir, Member of Technical Staff of X.AI LLC ("Executed on October 1, 2025 in Palo Alto, California."); ECF 38, Declaration of Christopher S.J. Park, Director and Co-Head of the X Developer Platform at X Corp. ("Executed on October 1, 2025 in New York, New York.") *with* ECF 56, Declaration of Sydney Carrick ("October 22, 2025, in Bastrop, Texas").

Defendants' sole Texas declarant lives in Bastrop, not Fort Worth. ECF 56. Defendants first provided that declaration as improper new evidence on reply in support of their motion to transfer because their moving papers lacked any support from Texans. ECF 54. The California court considered the belated evidence over Plaintiffs' objections.

All of Plaintiffs' in-person interactions with X occurred in NYC. *See* Walters Decl. ¶ 8.

All of Plaintiffs' in-person interactions with X.AI Entities have been in San Francisco or the Bay Area. *Id.* Some of these employees have extensive knowledge of the X.AI Entities operations, and Plaintiff Walters has discussed AI and AI Agents with them at length. *Id.* Based on these discussions and the engineer employees' knowledge of Grok and other engineering developments at the X.AI Entities, including the amendments made to Grok during Plaintiffs' cease and desist conversations, Plaintiffs likely need to call them at trial. *Id.* Given their employers' work culture, and given the distances they would be traveling, these employees likely would not willingly appear at trial – they would likely need to be forced. *Id.*

All of Plaintiffs' email communications, including with X's legal department, occurred with X employees in the Bay Area or NYC. *Id.* None of the events at issue arises out of any action or activity in Texas, let alone in the Northern District of Texas. *See* ECF 21; Walters Decl. ¶ 9.

Additionally, all of Plaintiffs' operations, offices, employees, witnesses, and anticipated third-party witnesses are in the Bay Area. Walters Decl. ¶¶ 11, 19–24. Many, if not all, of Plaintiffs' third party witnesses would be unwilling to provide trial testimony in this case, especially if it involves flying for several hours, without being compelled to attend. *Id.* ¶¶ 19–24.

All of Plaintiffs' sources of proof, computers, operations, and secure in-house servers are here. *Id.* ¶ 12. Plaintiffs cannot access these local secure servers from Texas, and the servers contain information relevant to this case, including the development and creation of AI Agents and other AI products. *Id.* Litigating in the Northern District of Texas will be grossly more expensive for Plaintiffs than litigating in the Northern District of California. *Id.* ¶ 10.

### 3. The San Francisco Bay Area Is The Hotbed For AI Investment, Research, and Development.

This case is all about AI and unlawful competition and harmful practices in the burgeoning AI space. ECF 21. It's not about X's Terms of Service, despite X's protestations to the contrary.

The San Francisco Bay Area is the epicenter for the current AI explosion. Miller Decl. ¶ 12 (attaching a paper describing the Bay Area as "ground zero for the global AI revolution"); *id.* ¶ 13 (attaching a paper explaining that "San Francisco and San Jose, Calif., metropolitan areas exhibit unmatched strength across all three AI pillars (talent, innovation, and adoption)" and calling the areas "superstars" in the AI space). The job market for AI is concentrated in the San Francisco Bay Area:



**Per capita, San Jose and San Francisco alone have about four times more AI job postings compared to the next 13 U.S. metro areas in 2023**

**Source:** Brookings' analysis of Stanford HAI, Crunchbase, STAR METRICS, USPTO, and Emsi data

*Id.* ¶ 12.

AI affects the housing market. *Id* ¶ 14. It affects retail and office rental space. *Id.* It impacts the social scene. *Id.* Because the San Francisco Bay Area is the AI epicenter, AI permeates all aspects of life and touches nearly everyone who resides in the Bay Area, in many different ways. *Id.* ¶¶ 12–14. The impact AI is having—both good and bad—on residents in the Bay Area is

incomparable to its impact on other parts of the country. *Id.*

III.   **Legal Analysis**

     A.   **Plaintiffs Could Not Have Filed This Suit In Northern District Of Texas Without Waiving Personal Jurisdiction And Suing An Unregistered Business.**

The first issue a court must address in considering a motion to transfer pursuant to 28 U.S.C. § 1404(a) is whether the transferee district is one in which the action "might have been brought." *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("The preliminary question under § 1404(a) is whether a civil action "might have been brought" in the destination venue."); *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 707 (N.D. Tex. 2009) ("The first question under the change of venue statute is whether the suit originally could have been filed in the proposed transferee venue."). The answer in this case is no.

As explained at-length in opposition to Defendants' Motion to Transfer (ECF 50), Plaintiffs *could not have filed in Texas* without foregoing substantive legal rights and demanding a defendant waive personal jurisdiction because (1) Texas lacks personal jurisdiction over Plaintiff Shaw Walters and (2) Defendant X.AI LLC is not registered to do business or headquartered in Texas, and thus lacks sufficient contacts to be sued here had Plaintiffs chosen this jurisdiction.

First, Plaintiff Walters is a California resident whose contacts with Texas amount to a handful of visits. He does not waive personal jurisdiction with respect to his claims, especially against Plaintiff Eliza Lab's direct competitors Nevada- and California-based X.AI LLC and X.AI Corp., with which Plaintiffs lack a contractual – or any other – relationship. Foregoing the right to pursue personal redress in his home state is tantamount to Walters not being able to file suit in this jurisdiction.

Second, X.AI LLC cannot be sued in Texas. To do business in Texas, companies must first

register with the state. *See* Tex. Bus. Org. Code § 9.001 (all foreign LLCs transacting business in Texas must register to do business in Texas; a "foreign entity" is an entity formed under the laws of a jurisdiction other than Texas). If an entity is neither registered nor headquartered in Texas—*and X.AI LLC is neither* (ECF 53-3, 53-4)—then that entity is not subject to personal jurisdiction in Texas because it lacks sufficient minimum contacts: it neither conducts business nor is located in Texas. Based on the publicly available information at the time of filing, Plaintiffs could not have sued unregistered Nevada- and California-based X.AI LLC in Texas. Practically, Plaintiffs would have no one to serve—there are no service agent or offices.

Defendant X.AI LLC cannot now waive its way into jurisdiction to avoid a transfer of this case back to California. "[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960); *Savarirayan v. Brisolara*, 46 F. App'x 226 (5th Cir. 2002) (transfer order assumes that venue will lie in either the transferor or transferee district making waiver of personal jurisdiction objections beside the point); *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 707–8 (N.D. Tex. 2009) (the fact that proposed transferee district might have had personal jurisdiction over defendant through waiver was irrelevant to making it a proper venue for transfer). To be sure, the courts frown on this type of tactical manipulation of the rules of jurisdiction, much like courts frown on forum shopping more generally.

### B.    Under the Volkswagen Factors, This Case Should Be Transferred Back to Northern District of California.

Only "[a]fter the Court is satisfied that the transferee venue is one where the suit could have been brought, the district court must then consider the convenience of the parties and witnesses in both forums." *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546,

550 (E.D. Tex. 2009). "If the potential transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue." *Kirsch Research and Development, LLC v. GAF Materials LLC*, 2020 WL 5815911, at *1 (N.D. Tex. Sept. 30, 2020).

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice … to any other district or division where it might have been brought." 28 U.S.C. §1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc*., 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). When considering a motion to transfer venue, a district court must consider several private and public interest factors "none [of which] can be said to be of dispositive weight." *Id.* at 315. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *Id.* The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.*

"No factor is of dispositive weight, and we have cautioned against a 'raw counting of the factors' that 'weigh[s] each the same.'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013)). The Fifth Circuit has found an abuse of discretion even where a majority of factors are neutral. *In re Radmax, Ltd.*, 720 F.3d at 290 (granting mandamus when five factors were neutral and three weighed in favor of transfer). "That is because *Volkswagen* recognized that a district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *In re TikTok, Inc.*, 85 F.4th at 358 (quoting *Volkswagen*, 545 F.3d at 318). Here, not a single factor favors

9

Defendants' forum; all favor Plaintiffs' Northern District of California choice.

Critically, this transfer analysis compares the Northern District of Texas with the Northern District of California. It does not weigh the Northern District of Texas versus the Western District of Texas.

### C.    Private Factors Support Transfer.

#### 1.    The relative ease of access to sources of proof favors transfer.

The first factor focuses on the location of "documents and physical evidence relating to the [case]." *Volkswagen*, 545 F.3d at 316. Because "'[t]he question is *relative* ease of access, not *absolute* ease of access'" to sources of proof, "this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th at 358 (quoting *Radmax*, 720 F.3d at 288) (citing *Volkswagen*, 545 F.3d at 316).

Here, most of the proof is in the Northern District of California. As Musk himself explained: "And then the X and X.AI . . . engineering headquarters in Palo Alto are just on Page Mill." Walters Decl. ¶ 18. Plaintiffs' claims relating to AI Agents, Defendants' development of competing AI Agents, Defendants' fraudulent behavior during Plaintiffs' cease and desist discussions, and Defendants' AI market share all depend on evidence and information located at these engineering headquarters in Palo Alto and Eliza's San Francisco headquarters.

Plaintiffs acknowledge that this case will involve electronic records. *See In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) ("[T]he vast majority of the evidence [is] electronic, and therefore equally accessible in either forum"). However, unlike in *Planned Parenthood*, this case also involves source code and other sensitive, locally-stored information. Plaintiffs have source code and other highly sensitive AI Agent development documents that are electronically stored securely in local servers in San Francisco. Walters Decl. ¶ 12. A physical presence is required to access them, which does not make the evidence equally

accessible here. *See In re TikTok, Inc.*, 85 F.4th at 359 (explaining that even though evidence was electronic, because it was protected source code, it was not "equally accessible in either forum") (quoting *Planned Parenthood*, 52 F.4th at 630).

Whether Defendants have documents or source code in Bastrop is beside the point: Bastrop is roughly 200 miles away from Fort Worth in an entirely different District. The relevant analysis here is between the Northern District of Texas and the Northern District of California, not California versus Bastrop. *See In re TikTok, Inc.*, 85 F.4th at 359 (holding that the court below "erred by comparing Texas with California when it should have been comparing the Western District of Texas with the Northern District of California") (citing *Volkswagen*, 545 F.3d at 307 (comparing the Eastern District of Texas with the Northern District of Texas)); *In re Radmax, Ltd.*, 720 F.3d at 288 (comparing two divisions within the Eastern District of Texas).

### 2.    The availability of compulsory process favors transfer.

The second factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen*, 545 F.3d at 315. "This factor favors transfer where 'non-party witnesses ... are outside the [] District's subpoena power' and 'a proper venue that does enjoy absolute subpoena power for both depositions and trial' is available. *In re TikTok, Inc.*, 85 F.4th at 360 (quoting *Volkswagen*, 545 F.3d at 316). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation marks omitted).

If this case remains here, Plaintiffs will be unable to subpoena any non-officer employees of any of Defendants to appear at trial, including employees at Defendants' engineering headquarters in Palo Alto. All non-officer employees are "outside the [Northern District [of Texas's] subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii)," so that "trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash

11

under Fed. R. Civ. P. 45(c)(3)." *Volkswagen*, 545 F.3d at 316 (quoting *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 205 n. 4 (5th Cir. 2004)). The non-officer engineering witnesses in Palo Alto will be necessary here because: (1) Plaintiff Walters had relevant discussions and a relationship with several of them before this lawsuit began, so Walters knows who in the engineering team has useful, relevant information (Walters Decl. ¶ 8); (2) the non-officer engineer employees know – or should know – the detailed development and operations of Defendants' AI Agents (critical for Plaintiffs' fraud and unfair competition claims); (3) they can explain—or should be able to explain—Defendants' integration of Grok on X's platform, how Grok accesses, digests, and incorporates X's platform data, and whether other non-Grok AI Agents have the same access (critical for Plaintiffs' antitrust claims); and (4) without a subpoena, Defendants may not allow these key witnesses to testify at trial.

The Northern District of California also contains all of Plaintiffs' witnesses, including third party witnesses who cannot be compelled to this District. Walters Decl. ¶¶ 8, 19–24. Given that X has a reputation for being retaliatory, these third-party witnesses will not willingly appear to testify at trial for Plaintiffs; they will have to be subpoenaed. *Id.*; *see In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630–31 (5th Cir. 2022) (this private factor favors transfer only if third party witnesses are unwilling to testify); *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d at 488, 499 (6th Cir. 2016) (the "availability of compulsory process" factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify"); *see also Curtis v. Galakatos*, 19 F.4th 41, 53 (1st Cir. 2021) (same). This problem will directly impact Plaintiffs' ability to present their case.

Whether Defendants have any witnesses in Bastrop is irrelevant because they, too, are outside the 100-mile radius rendering a subpoena for their testimony subject to a motion to quash.

*See* Fed. R. Civ. P. 45(c)(3)(A)(ii); Fed. R. Civ. P. 45(c)(3). This further underscores the inappropriateness of this jurisdiction in this instance—X's choice here is obvious litigation tactics.

### 3.    The cost of attendance for willing witnesses favors transfer.

The third factor focuses on "the cost of attendance for willing witnesses." *Volkswagen*, 545 F.3d at 315. The Fifth Circuit uses a "100-mile threshold" in assessing this factor. *Id.* at 317. "When the distance between an existing venue for trial ... and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (internal quotation marks omitted). This is an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time ... meal and lodging expenses" and time "witnesses must be away from their regular employment." *Id.* (cleaned up). Witnesses also suffer "personal costs associated with being away from work, family, and community" when they testify far from home. *Id.*

Here, the key witnesses are in the Bay Area, California: Plaintiff Walters, all of Plaintiff Eliza's employees, all of Defendants X.AI LLC and X.AI Corp.'s employees, and X Corp.'s engineering employees. These witnesses would have to travel hundreds of "extra miles, incurring substantial 'additional travel time ... meal and lodging expenses[,]' time 'away from their regular employment[,]' and 'personal costs associated with being away from work, family, and community.'" *TikTok, Inc.*, 85 F.4th at 361–62 (quoting *Volkswagen*, 545 F.3d at 317 (cleaned up)).

If Defendants can identify any closer witnesses (and that is doubtful), they would likely reside in Bastrop, which is roughly 200 miles away. Under *Volkswagen*'s 100-mile threshold, the Northern District of California is a clearly more convenient venue for most relevant witnesses in this case.

####       4.        All other practical problems favor transfer.

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315. Courts consider delay in seeking transfer. *See Planned Parenthood*, 52 F.4th at 631; *see also* TikTok, 85 F.4th at 362 ("This factor weighs against transfer when petitioners inexcusably delayed bringing their motion until late in the litigation.) (quotations and citations omitted). There has been no delay here that would justify keeping the case in this District. *See Radmax*, 720 F.3d at 289 n.7 (with respect to the fourth factor, the petitioner "moved for change of venue promptly—three weeks after being served with process").

"When a defendant is haled into court, some inconvenience is expected and acceptable." *Def. Distributed*, 30 F.4th at 433. By keeping this case in the Northern District of Texas, Plaintiffs suffer significantly more inconvenience than Defendants. Such a result is incongruous with allowing some inconvenience to defendant, versus plaintiff, who initially chose to file elsewhere. This Court can easily find that Defendants have ample means to withstand slightly greater inconvenience. Truly, one could even say that California is more convenient and less costly for Defendants, too, because most of their relevant engineering operations remain in California. There is no greater convenience achieved by any party in litigating here, and X is but one of five named parties.

Also under this prong, the Fifth Circuit has concluded that a hypothetical question about whether the transferee forum would have personal jurisdiction over a party cannot, by itself, justify a conclusion that weighs against transfer, *TikTok, Inc.*, 85 F.4th at 362–63; *Def. Distrib. v. Bruck*, 30 F.4th 414, 435–36 (5th Cir. 2022) (holding that hypothetical questions of jurisdiction cannot tip this factor against transfer). However, no court has held that grave concerns regarding due process and personal jurisdiction cannot be considered under this factor. *See supra*, Section III.A.

(explaining that this Court lacked personal jurisdiction over Walters and X.AI LLC at the time of filing).

     **D.**    **Public Factors Support Transfer.**

        **1.**    **Judicial economy and court congestion favors transfer.**

This Court is best situated to assess this factor itself. *See Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 631 ("the district court is better placed" to evaluate its "docket efficiency").

Plaintiffs experienced no congestion or delay—and a very efficient docket—in the Northern District of California. Plaintiffs filed their First Amended Complaint on September 23, 2025. ECF 21. In the span of just over a month, the Northern District of California ruled on: (1) Plaintiffs' TRO/OSC (ECF 26 (Sept. 29, 2025)), briefing order received the same day (ECF 27), hearing and order within five days (ECF 46)); (2) Plaintiffs' Request for Judicial Notice (ECF 46); (3) the Parties' Joint Stipulation regarding Scheduling Matters (ECF 49); (4) and Defendants' Motion to Transfer (ECF 60). The Northern District of California's order on Defendants' Motion to Transfer arrived *less than one week* after Defendants filed their reply brief. *See* ECF 54 (Oct. 22, 2025) *and* ECF 60 (Oct. 27, 2025). To date, the Northern District has expeditiously and swiftly responded to all activity in this case, in the midst of a government shutdown no less.

In support of its Motion to Transfer to this District, Defendants cited "time to trial" statistics. *See* ECF 54 at 7. The Fifth Circuit has repeatedly rejected statistics on time to trial. *See In re Clarke*, 94 F.4th 502, 510 (5th Cir. 2024) ("petitioners' and CFTC's statistics carry little weight") *TikTok*, 85 F.4th at 363 n.12 (contentions relying on such statistics were "foreclosed by *Planned Parenthood*'s recognition that, as a general matter, 'the district court is better placed' to evaluate its 'docket efficiency'") (quoting *Planned Parenthood*, 52 F.4th at 631)).

Instead of relying on "time to trial" statistics, this Court is in the best position to assess its congestion, and Plaintiffs accordingly defer.

Further, "[i]t is well-settled law that § 1404(a) transfer cannot be granted solely because of court congestion … because court congestion is speculative and ignores the plaintiffs' role as master of the complaint." *In re Chamber of Com. of United States of Am.*, 105 F.4th at 311 (quoting *In re Clarke*, 94 F.4th at 508 (quoting *Volkswagen*, 545 F.3d at 315)). Here, this means that whether the Northern District of California is more congested cannot form the basis of refusing to transfer this case back to Plaintiffs' chosen forum.

As demonstrated by the Northern District of California's quick handling of this case to-date, this factor may weigh in favor of transfer or be neutral, depending on this Court's own assessment.

### 2.    Local interests favor transfer.

"[T]he local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th at 511 (emphasis in original) ("We do not consider the parties' connections to the venue because the local interest analysis is a public interest factor."). Courts must consider "the location of the injury, witnesses, and the [p]laintiff's residence" because those considerations "are useful proxies for determining what local interests exist in each venue." *Id.*

Localized interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 308 (5th Cir. 2024). "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963).

The broader concern in this case is about ensuring robust competition in developing AI

tools, including ensuring equal access to the training data sources for all companies and individuals building AI tools. While AI impacts humanity worldwide, the San Francisco Bay Area is a hotbed of action related to AI, including AI investments, operations, and research and development. Miller Decl. ¶¶ 12–14. The San Francisco Bay Area is home to Nvidia, Apple, Google, Meta Platforms, LinkedIn, Oracle, Cisco, Stanford University, Salesforce, Autodesk, OpenAI, Anthropic, and other AI research and development powerhouses—and was home to X until recently. *Id.* This activity—which dwarfs the next biggest market in much-larger NYC—currently infiltrates all aspects of life in the San Francisco Bay Area. *Id.* The funding flowing into AI impacts housing prices, rent prices, jobs, and the costs of goods and services. *Id.*

Accordingly, the people in the Bay Area have a local interest in promoting competition in the AI space, which encourages spreading investments over more entities, and spreading wealth across more people to prevent spikes in housing prices, goods, and services. Spreading investments across more entities and encouraging competition also promotes a robust economy with more employers that may flatten the impact of single entity failures.

Fort Worth has a robust economy and an important tech and AI scene, but nowhere else in the United States compares with the level of intense AI focus currently driving the San Francisco Bay Area. *Id.* Overall, with AI having disproportionate impacts on employment, housing, and costs of goods and services in the Bay Area versus the rest of the country, a Bay Area jury is best situated to hear this case. Plaintiffs acknowledge that some of the interests in this case, such as establishing precedent to prevent X from deplatforming users for anticompetitive purposes and preventing fraud, are "completely diffuse" in that they impact X users everywhere and thus "cannot affect the local-interest determination." *In re Clarke*, 94 F.4th at 510; *In re Chamber of Com. of United States of Am.*, 105 F.4th at 309 (if "the interest is the same in both the transferor and transferee venue[,

17

t]hese completely diffuse local interests net out to zero—neither favoring nor disfavoring transfer").

However, this case has many claims. And the thrust of Plaintiffs' complaint is the antitrust and anticompetitive impacts that Defendants' actions have in the AI space.

### E. Assuming A Valid Forum Selection Clause Exists (It Does Not, As Explained *Infra*, Section G), Courts Must Consider the Public Factors.

The existence of a valid forum selection clause alters the transfer analysis in two ways: "First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013). Second, the "district court may consider arguments about public-interest factors only," because the private-interest factors "weigh entirely in favor of the preselected forum." *Id.* at 64; *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 830–31 (N.D. Tex. 2013) (citation omitted).

Here, two of the public interest factors (local interests and court congestion) combine to strongly support transfer to the Northern District of California. Another important consideration is that Defendants demand the right to burden this District and its jury pool with the expense and effort of resolving its myriad disputes without delivering any of the economic benefits of its ongoing business (tax revenues, jobs, real estate needs, etc.) to the region. Accordingly, even if there were a valid forum selection clause (there is not), this Court still must weigh these public interest factors against the forum selection clause and has discretion to transfer this case.

### F. The Closely Related Doctrine Does Not Apply Here Because It Is Not Foreseeable That Plaintiffs, By Using X's Platform, Would Be Required To Bring Claims Against Their Direct California-Based Competitor In Texas.

The "closely-related doctrine" allows a non-signatory to be bound by a forum selection clause in certain circumstances. *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 438–39 (5th Cir.

2022). "For the doctrine to bind a non-signatory to a forum selection clause, first, 'the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound.'" *Id.* at 441 (*quoting Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). While courts may consider specific factors to determine whether a non-signatory is closely related, the doctrine "is context specific and is determined only after weighing the significance of the facts relevant to the particular case at hand." *Id.* at 442 (identifying factors as "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly").

Indeed, the Fifth Circuit specified that there is not "a rigid test" to use when applying this doctrine. *Id.* Notwithstanding its adoption of the closely-related doctrine, the Fifth Circuit reiterated that "non-signatories should only have contractual provisions enforced against in them in 'rare circumstances'" and that the doctrine should be narrowly applied. *Id.* at 442 n.8 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 358 (5th Cir. 2003)).

This is not a "rare circumstance" that warrants application of the closely related doctrine. First, the "closely related" doctrine does not purport to supplant personal jurisdiction. "[A] plaintiff's use of the 'closely related' doctrine to establish personal jurisdiction over a non-signatory defendant … implicates a constitutional due process problem by circumventing the minimum-contacts requirement." *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 312 (6th Cir. 2024); *see also Truinject Corp. v. Nestle Skin Health, S.A.*, No. 19-592-LPS-JLH, 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019) (expressing "serious questions about the constitutionality of" the doctrine).

As explained above, Texas lacks personal jurisdiction over Plaintiff Walters, and

19

Defendant X.AI LLC is not registered to do business in Texas. Neither of Plaintiffs has ever signed a contract with or done business with X.AI LLC or X.AI Corp., and Plaintiff Walters has not, and does not now, waive personal jurisdiction for any claims against the non-contracting parties.

Further, Defendants' atypical use of the doctrine forces the transfer of Plaintiffs to a non-preferred (less convenient) forum: a bizarre result. Cases applying the closely related doctrine typically involve a plaintiff enforcing a forum selection clause against a non-signatory defendant. *See Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 425 (E.D. Tex. 2021) (discussing cases in which plaintiffs attempted to enforce a forum selection clause against non-signatory defendants, who "orchestrated an elaborate web of entities to perpetuate fraud or avoid contractual obligations" and thus against whom the closely related doctrine was just).

Compare here, where two non-signatory direct competitor Defendants attempt to force an individual Plaintiff to litigate claims in a forum that requires Plaintiff Walters to waive personal jurisdiction. This is not a case presenting a "rare circumstance" of inextricable intertwinement in which a forum selection clause should bind a non-signatory, let alone a non-signatory plaintiff. *Bridas*, 345 F.3d at 358. It is an offensive use of a questionable doctrine that violates a plaintiff's due process and thwarts 28 U.S.C. § 1391.

### G.    X's Forum Selection Clause Is Unreasonable And Therefore Invalid.

As this Court noted (ECF 65), Defendants' forum selection clause has no relationship to this District. Forum-selection clauses are presumptively enforceable, but "the presumption of enforceability may be overcome ... by a clear showing that the clause is unreasonable under the circumstances." *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997); *see also*

*Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 773 (5th Cir. 2016).[3]

        Unreasonableness may be shown if:

1.     The clause was the product of fraud or overreaching;

2.     Enforcement would deprive the party of their day in court due to grave inconvenience or unfairness;

3.     The chosen law would deprive the plaintiff of a remedy;

4.     Enforcement would contravene a strong public policy of the forum state.

*PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1074 (5th Cir. 2020). These factors are not exclusive. *Haynsworth*, 121 F.3d at 963; *see also Skyhawke Technologies, LLC v. Golftec ST LLC*, 2024 WL 3469497 (S.D. Miss. Apr. 11, 2024).

        Unreasonableness may exist if the chosen forum lacks a reasonable relationship to the transaction. *See Irsik & Doll Feed Serv's, Inc. v. Roberts Enterprises Investments, Inc.*, Case No. 6:16-1018-EFM-GEB, 2016 WL 3405175 at *5 *(D. Kans. June 20, 2016); *see also Sanchez v. Nitro Lift Technologies, L.L.C.*, 91 F. Supp.3d 1218, 1223 (E.D. Okla. 2015) ("Moreover, a forum selection clause must bear a reasonable relationship to the transaction. Houston, Texas does not

---

[3] In diversity cases, which this is not, circuits are split on whether a forum-selection clause's validity/enforceability is governed by state or federal law. *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016) ("Neither the Supreme Court nor this court has said what source of law governs the 'validity' of a forum-selection clause."); *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008) (federal law applies to determine enforceability in diversity cases); *Rolfe v. Network Funding LP*, No. 14–CV–9–BBC, 2014 WL 2006756, at *1 (W.D. Wis. May 16, 2014) (courts and commentators have continued to express uncertainty about "whether a federal court in a diversity case should look to federal law, state law or both when deciding whether a forum selection clause is valid"). In this federal subject matter case, federal law applies, but if Texas law were to apply, it would make no practical difference because Texas law uses the same standards. *Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020).

bear a reasonable relationship to [p]laintiffs' employment with [defendant] in [Oklahoma]. Accordingly, the forum selection clause is unenforceable."); see also *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp.2d 118, 128 (S.D. N.Y. 1997) ("In addition, it would not be unreasonable or unjust for defendants to litigate in New York, given that New York has a substantial connection to the controversy."); *Carefree Vacations, Inc. v. Brunner*, 615 F. Supp. 211 (W.D. Tenn. 1985) (finding forum selection clause calling for suit to be brought in Texas was unenforceable where contract was executed in Illinois and Tennessee and that Texas did not have a "reasonable relationship to the transaction"); *Harmon v. Dyncorp Intern., Inc.*, No. 1:13CV1597(LMB/TRJ), 2015 WL 518594 at *9 (E.D. Va. Feb. 6, 2015) ("The forum selection clauses contained in plaintiffs' [contracts] designating Dubai as the exclusive forum for plaintiffs' present claims are unreasonable. There is no connection between any underlying event and the United Arab Emirates.").

In *Skyhawke*, the court found the forum-selection clause unenforceable because Delaware had no connection to the parties, the contract, or the dispute. Similarly, here:

- None of the parties are headquartered in the Northern District of Texas;

- The relevant events, witnesses, and evidence are located in California, not Texas;

- Defendant X.AI LLC is not registered to do business in Texas, nor is it headquartered there;


- Plaintiffs and X.AI Entities are direct competitors, not signatories or beneficiaries of X's Terms of Service;

- Plaintiff Walters is a California resident with almost no contacts with Texas.

The forum-selection clause at issue is a blatant attempt at forum shopping for a district to

22

which X has no meaningful contacts, and which X may be selecting in an attempt to politicize the federal judiciary. As in *Skyhawke*, enforcing such a clause would be unreasonable and unjust.

Moreover, the forum selection clause is unreasonable because under these circumstances it would, for all practical purposes, deprive Plaintiffs of their day in court. As explained above, the selected forum is not where Plaintiffs reside, are headquartered, or where any relevant witnesses and evidence are located. Litigating in the Northern District of Texas would impose significant financial and logistical burdens on Plaintiffs, who would be forced to transport witnesses and critical evidence across the country, incur substantial travel and lodging expenses, and face the practical impossibility of compelling unwilling third-party witnesses to appear.

Further, enforcing the forum selection clause is unreasonable and unjust because it would deprive Plaintiffs of remedies exclusive to California and contravenes California's strong public policy favoring consumer and business protections. Texas has no equivalent to California's unfair competition laws. *Compare* Cal. Bus. & Prof. Code § 17200 *et seq. with* Texas Bus. & Com. § 15.04 *et seq.* (statute providing for private causes of action for individuals or businesses harmed by monopolization, price-fixing, or other anticompetitive practices but not other unfair or fraudulent business acts); *see* Texas Bus. & Com. § 17.46 (statute prohibiting false, misleading, or deceptive acts or practices but not unlawful or unfair business acts); Texas Bus. & Com. § 17.50 (statute protecting consumer from economic damages or mental anguish based on the use of employment of false, misleading, or deceptive acts or practices but not unlawful and unfair business acts). Texas laws provide far less protection from unlawful and unfair business acts, especially for companies. California's consumer and business protection laws reflect its strong public policy favoring fair business practices. Transferring Plaintiffs out of California will allow businesses operating in California to avoid these protections. *See Baton v. Ledger SAS*, 740 F.

Supp. 3d 847, 895 (N.D. Cal. 2024) (the court refused to enforce a forum-selection clause where doing so would contravene California's strong public policy favoring consumer class actions and deny plaintiffs an equivalent mechanism for vindicating their rights under the UCL and CLRA); *N.Z. v. Fenix International Ltd.*, 2025 WL 1122493 (C.D. Cal. Apr. 9, 2025) (court refused to enforce a forum-selection clause because applying English law would substantially diminish California residents' rights, particularly by limiting class actions).

Additionally, the forum selection clause here is fundamentally unreasonable because it lacks mutuality and imposes an unreasonable burden on Plaintiffs, while providing no additional convenience or cost savings to X. Under its terms, the clause gives X the unilateral right to sue a party in any court within the party's country of residence that has jurisdiction and venue, while a plaintiff remains bound by the forum-selection terms: "Without prejudice to the foregoing, you agree that, in its sole discretion, X may bring any claim, cause of action, or dispute we have against you in any competent court in the country in which you reside that has jurisdiction and venue over the claim."

In other words, X can choose any competent court in a defendant's country, but a plaintiff cannot. By reserving to itself the right to sue in any competent court while restricting the plaintiff to a single forum, X creates an asymmetrical and oppressive arrangement that should be deem unreasonable and unjust. *See, e.g.*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972) ("A contractual choice of forum should be honored unless enforcement would be unreasonable and unjust.").

In short, X's unreasonable forum selection clause should not be enforced.

## I.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move to transfer this case to the Northern

24

District of California, where Plaintiffs originally filed.

Dated: November 6, 2025

Respectfully submitted:

/s/ *Chase Hilton*

Warren T. Burns
State Bar No. 24053119
Chase T. Hilton
State Bar No. 24100866
Anna Katherine Benedict
State Bar No. 24143946
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
chilton@burnscharest.com
abenedict@burnscharest.com

Christopher Cormier (pending admission *pro hac vice*)
DC Bar No. 496384
BURNS CHAREST LLP
2445 M Street NW, Suite 740
Washington, DC 20037
Telephone: (202) 577-3977
ccormier@burnscharest.com

Matthew F. Miller (pending admission *pro hac vice*)
CA Bar No. 172661
Batya F. Forsyth (pending admission *pro hac vice*)
CA Bar No. 192346
Susanna L. Chenette (pending admission *pro hac vice*)
CA Bar No. 257914
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
mmiller@hansonbridgett.com
bforsyth@hansonbridgett.com
schenette@hansonbridgett.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(b), Susanna Chenette and Matthew Miller met and conferred with defense counsel Joel Kurtzberg, Ivan Torres, and John MacGregor on November 4, 2025. Mr. Kurtzberg informed Ms. Chenette and Mr. Miller that Defendants oppose Plaintiffs' Motion to Transfer.

*/s/ Chase Hilton*
Chase Hilton

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Chase Hilton*
Chase Hilton