# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| ELIZA LABS, INC., a corporation, and SHAW WALTERS, an individual, | |
| Plaintiffs, | |
| v. | **No. 4:25-cv-01208-P** |
| X CORP. (fka Twitter), a corporation, X.AI CORP., a Nevada corporation, and X.AI LLC, a Nevada limited liability company, | |
| Defendants. | |

## BRIEF OF DEFENDANTS X CORP., X.AI CORP, AND X.AI LLC
## IN OPPOSITION TO PLAINTIFFS MOTION TO RETRANSFER

Noah M. Schottenstein, Texas Bar No. 24087072
Christopher D. Hilton, Texas Bar No. 24087727
Michael Abrams, Texas Bar No. 24087072
Stone Hilton PLLC
301 Commerce Street
Bank of America Tower
Suite 2360
Fort Worth, TX 76102
Telephone: 737.465.3897
noah@stonehilton.com
chris@stonehilton.com

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (admitted *pro hac vice*)
  *jkurtzberg@cahill.com*
JOHN MACGREGOR (*pro hac vice* pending)
  *jmacgregor@cahill.com*
32 Old Slip
New York, NY 10005
Telephone: 212.701.3445

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 3

    A.   Plaintiff's Allegations ............................................................................................. 3

    B.   The Terms ............................................................................................................... 4

    C.   Procedural History ................................................................................................. 7

ARGUMENT ............................................................................................................................ 8

  II.    THE TRANSFER ORDER IS ENTITLED TO SIGNIFICANT DEFERENCE UNDER THE LAW OF THE CASE DOCTRINE ....................................................................... 8

  III.    THE TRANSFER ORDER WAS NOT CLEARLY ERRONEOUS ......................... 10

    A.   The Transferor Court Did Not Commit Manifest Error by Concluding That Plaintiffs Had Not Rebutted the Presumptive Validity of The Forum Selection Clauses .................... 11

    B.   The Transferor Court Did Not Commit Manifest Error by Holding the Forum Selection Clause Applied to Plaintiffs' Claims Against the X.AI Defendants ..................................... 17

    C.   The Transferor Court Did Not Commit Manifest Error in Applying the § 1404(a) Factors ........................................................................................................................ 20

CONCLUSION ........................................................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)................................................................23

*Atlantic Marine Construction Co., Inc.* v. *U.S. District Court for the Western
   District of Texas*,
   571 U.S. 49 (2013)..........................................................................21, 22

*Bridas S.A.P.I.C.* v. *Government of Turkmenistan*,
   345 F.3d 347 (2003)...........................................................................19

*Carnival Cruise Lines, Inc.* v. *Shute*,
   499 U.S. 585 (1991)...........................................................................14

*In re Chamber of Commerce of United States of America*,
   105 F.4th 297 (5th Cir. 2024) ...............................................................23

*Christianson* v. *Colt Industries Operating Corp.*,
   486 U.S. 800 (1988)...........................................................................10

*Collier* v. *Burnes*,
   2022 WL 562897 (N.D. Tex., Feb. 24, 2022)........................................8, 9

*In re Cragar Industries, Inc.*,
   706 F.2d 503 (5th Cir. 1983) .........................................................1, 8, 10

*Deutsche Bank National Trust Co.* v. *Burke*,
   902 F.3d 548 (5th Cir. 2018) ...........................................................1, 10

*In re Ford Motor Co.*,
   591 F.3d 406 (5th Cir. 2009) ...............................................................10

*Franklink Inc.*, v. *BACE Services, Inc.*,
   50 F.4th 432 (5th Cir. 2022) ...............................................................19

*Grigson* v. *Creative Artists Agency, L.L.C.*,
   210 F.3d 524 (5th Cir. 2000) ...............................................................19

*Hartash Construction* v. *Drury Inns, Inc.*,
   252 F.3d 436 (5th Cir. 2001) ...............................................................16

*Haynsworth* v. *The Corporation*,
   121 F.3d 956 (5th Cir. 1997)...............................................................12

*HSM Holdings, LLC* v. *Mantu I.M. Mobile Ltd.*,
    2021 WL 3115486 (S.D.N.Y. July 21, 2021) ........................................................17

*In re Lyon Financial Services, Inc.*,
    257 S.W.3d 228 (Tex. 2008)...............................................................................17

*M/S Bremen* v. *Zapata Off-Shore Co.*,
    407 U.S. 1 (1972)...............................................................................................11

*Noble House, L.L.C.* v. *Certain Underwriters at Lloyd's, London*,
    67 F.4th 243 (5th Cir. 2023) ..............................................................................11

*Odem* v. *Centex Homes, Inc.*
    2010 WL 2382305 (N.D. Tex. May 19, 2020) .....................................................8

*In re Planned Parenthood Federation of America, Inc.*,
    52 F.4th 625 (5th Cir. 2022) ...............................................................21, 22, 23

*Quicksilver Resources, Inc.* v. *Eagle Drilling, LLC*,
    2008 WL 3165745 (S.D. Tex. Aug. 4, 2008) ........................................................1

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ..............................................................................20

*Romanowski* v. *Trans Union, LLC*,
    2022 WL 581810 (N.D. Tex. Feb. 24, 2022)......................................................9

*Sanders* v. *City of San Angelo*,
    2006 WL 8438769 (N.D. Tex. Dec. 5, 2006) ......................................................9

*Sun* v. *Advanced China HealthCare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ............................................................................12

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ..............................................................................22

*Vine* v. *PLS Financial Services, Inc.*,
    689 F. App'x 800 (5th Cir. 2017) .................................................................16, 17

*In re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................................11

*Weber* v. *PACT XPP Technologies, AG*,
    811 F.3d 758 (5th Cir. 2016).........................................................................16, 21

*Wright* v. *Nexus RV, LLC*,
    2020 WL 3440583 (N.D. Tex. June 23, 2020) ..........................................11, 12, 21

*Zamber* v. *American Airlines, Inc.*,
    2020 WL 3163037 (N.D. Tex. June 11, 2020) ....................................................1, 9

**Statutes**

28 U.S.C. § 1404(a) ..............................................................................................21

**Other Authorities**

Fed. R. Civ. P. 45(c) ............................................................................................23

## PRELIMINARY STATEMENT

Plaintiffs' Motion to retransfer this case back to the Northern District of California fails to address binding Fifth Circuit law on the applicable legal principles and standards that govern motions to retransfer, and instead merely repackages the same legally unsupported arguments that the Northern District of California rightly rejected.  As Fifth Circuit law makes clear, "the decision of a transferor court [to transfer a case] should not be reviewed again by the transferee court."  *In re Cragar Industries, Inc.*, 706 F.2d 503, 505 (5th Cir. 1983).  Accordingly, when a "motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'"  *Id.* (quoting *United States* v. *Koenig*, 290 F.2d 166, 173 n.11 (5th Cir. 1961), *aff'd*, 396 U.S. 121 (1962)).  "Policies supporting the law of the case doctrine apply with 'even greater force to transfer decisions than to decisions of substantive law' because 'transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.'"  *Quicksilver Resources, Inc.* v. *Eagle Drilling, LLC*, 2008 WL 3165745, at *5 (S.D. Tex. Aug. 4, 2008) (quoting *Christianson* v. *Colt Industries Operating Corp.*, 486 U.S. 800, 819 (1988)).

Plaintiffs' Motion fails to show that the Northern District of California's Transfer Order should be revisited under this exacting standard.  Plaintiffs do not argue that this case presents the kind of "[i]mpelling and unusual circumstances" where "unanticipatable post-transfer events frustrate the original purpose for transfer."  *Zamber* v. *American Airlines, Inc.*, 2020 WL 3163037, at *5 (N.D. Tex. June 11, 2020).  Plaintiffs therefore must show manifest error, which requires a showing that the Transfer Order was "more than just 'maybe or probably wrong; it must be dead wrong.'"  *See Deutsche Bank National Trust Co.* v. *Burke*, 902 F.3d 548, 551 (5th Cir. 2018)

1

(quoting *Hopwood* v. *Texas*, 236 F.3d 256, 272-73 (5th Cir. 2000)). Plaintiffs' Motion—which barely mentions the Transfer Order in an attempt to resubmit the same arguments the Northern District of California already rejected—does not come close to meeting the high bar the Fifth Circuit has set for a motion to retransfer.

Plaintiffs' Motion boils down to two primary arguments: (i) the mandatory Northern District of Texas forum selection clauses in the agreements between X and the Plaintiffs should be set aside as unenforceable based on Plaintiffs' speculative claims of "forum shopping" because X's headquarters are located in the Western District of Texas, rather than the Northern District, Plaintiffs' Motion to Transfer ("Mot.") at 1, 20-23; and (ii) the closely related doctrine should not be interpreted as providing a valid basis for venue as to the claims Plaintiffs added against X.AI LLC and X.AI Corp. (the "X.AI Defendants") in an amended complaint that was filed after X had indicated it intended to transfer this case to this District. Judge Martínez-Olguín's Transfer Order correctly rejected each of those arguments. As to the first argument, the Transfer Order held that Plaintiffs had failed to make the required "strong showing" of any of the factors relevant to a finding of unenforceability. Order Granting Transfer ("Transfer Order") at Appx. 298. As to the second, the Transfer Order explained that "[i]n light of the factual overlap across Plaintiffs' claims, [Plaintiffs'] assertion that their claims against the X.AI Defendants have no close relation to the X User Terms is unpersuasive." *Id.* at 291.

Plaintiffs' motion fails to identify *any* precedent—let alone the required controlling precedent—that suggests either of these central conclusions were "dead wrong." Plaintiffs' Motion similarly identifies no manifest error that would warrant this Court's reconsideration of the Transfer Order's determination that the "court must deem [§ 1404(a)'s] private-interest factors to weigh entirely in favor of the preselected forum" in light of the forum selection clause in the

parties' agreement.  *Id.* at 288.  For these reasons, and those set forth below, this Court should deny Plaintiffs' motion to transfer this case back to the Northern District of California.

## RELEVANT BACKGROUND

### A.  Plaintiff's Allegations

Plaintiff Eliza Labs, Inc. ("Eliza Labs") alleges that it is a software developer, founded by Plaintiff Shaw Walters in 2024, that developed open source software for operating autonomous agent systems ("AI Agents" or "Generative AI Chatbots") on social media platforms.  *See* Plaintiffs' Second Amended Complaint ("SAC") ¶¶ 4, 18, 33-34.  Plaintiffs allege that their software enables individuals to create AI Agents that can operate on the X platform, operated by X Corp.  *See id.* ¶ 4.  Plaintiffs also allege that they maintained developer accounts on the X platform, with handles "@ElizaOS" and "@shawmakesmagic," respectively.  *See id.* ¶¶ 8, 52. Plaintiff Eliza Labs is a Delaware corporation with its principal place of business in San Francisco, California, and plaintiff Walters is a citizen of California.  *Id.* ¶¶ 18-19.

Plaintiffs allege that Defendant X Corp. is a "Nevada Corporation with a principal place of business" in "Bastrop, [Texas]," that Defendant X.AI LLC is a "Nevada limited liability company . . . with a place of business" in "Palo Alto, [California]," and that both X Corp. and X.AI LLC are subsidiaries of Defendant X.AI Corp, a "Nevada corporation with its principal place of business located in Palo Alto, California."  *See id.* ¶¶ 20-22.  Plaintiffs further allege that Defendant X suspended or "deplatformed" their associated X accounts under "false pretenses" to "extract know-how, eliminate a competitor, and clear the field" for the launch of X.AI's AI Agents software.  *Id.* ¶¶ 14, 66, 71-74, 149.  From early 2025 through August 2025, X allegedly alerted Plaintiffs that their accounts violated X's terms and conditions, including the X User Terms, through several communications, including a cease and desist letter.  *See id.* ¶¶ 35-39, 56-61. During the course of the parties' communications, X allegedly sought information regarding Eliza

Labs' software integration with X's platform and its compliance with the X User Terms. *See* SAC ¶¶ 35-39, 56-61. In response, Plaintiffs allegedly provided X with information about its open source software, including information about "creating, developing, building, and deploying AI Agents" and "[Eliza Labs'] operations on X." *Id.* ¶ 56. X allegedly requested "detailed, specific information" to incorporate into the development of X.AI's AI Agent AI. *Id.* ¶ 63.

Plaintiffs allege that X claimed their accounts violated its terms and conditions, suspended their accounts on or around June 10, 2025, and allegedly blocked links to Eliza Labs' website and Github from being published on X. *See id.* ¶¶ 10, 52, 54. Plaintiffs allege that "[a]t all times since their suspension, both accounts complied fully with X's terms and conditions," and that Plaintiffs repeatedly "demonstrated [their] full compliance with X's terms and conditions" when responding to X's requests for more information. *Id.* ¶ 55.

The crux of the allegations—which Defendants deny—is that X conspired with its corporate affiliates, X.AI Corp. and X.AI LLC, to remove competition from the AI market by preventing Plaintiffs from operating on X's platform. The complaint alleges that X falsely invoked violations of X's Terms of Service to deplatform Plaintiffs to benefit the X.AI Defendants. *Id.* ¶¶ 12-15, 63, 149.

## B. The Terms

Users of X's platform agree to its Terms of Use when creating, accessing, and using their X accounts. Users who set up paid accounts also affirmatively agree to the Developer Agreement, which governs a user's access to and use of licensed X Application Programming Interfaces ("APIs"), X content such as user profile information ("Licensed Material"), and related paid services, by clicking "Accept & Subscribe." *See* Declaration of Megan Scolari in Support of Defendants' Motion to Transfer this Action from N.D. Cal. to N.D. Tex. ("Scolari Decl.") at Appx. 133-34, ¶¶ 25-27; *see also* Scolari Decl., Ex. 5 (Developer Agreement) at Appx. 160-98.

Plaintiffs allege that "X and X.AI agree to prevent other AI Agents or chatbots from operating on X's platform" through a variety of mechanisms, including through X's Terms of Service.  SAC ¶¶ 149, 179, 240.  Plaintiffs recognize that X has the authority to enforce its Terms.

The terms of use governing Plaintiffs' use and access of X's platform stated at all relevant times that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."  Scolari Decl., Ex. 1 (Current X User Terms, effective November 15, 2025) at Appx. 147.

On October 16, 2024, X published an update to its Terms of Service, to be effective on November 15, 2024, including the following mandatory forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and [users] consent to personal jurisdiction in those forums and waive any objection to inconvenient forum.

*Id.*  The X User Terms also include a choice of law provision providing that "[t]he laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary."  *Id.*

On October 16, 2024, X began notifying users about the updated terms.  Among other things, X served the following prompt to X users that logged into their accounts:



Scolari Decl., Ex. 4 at Appx. 158. The prompt also included a link to the updated X User Terms.

*Id.* The prompt served to X account holders provided:

> **Updates to our Terms of Service and Privacy Policy**
> We're updating our Terms of Service and Privacy Policy. Now's a great chance to review them. If you want to learn more about these changes, head to the X Privacy Center.

Scolari Decl. at Appx. 131, ¶ 16. Users were required to affirmatively acknowledge and agree to the revised terms by clicking on the "Got it" button. *Id.* The hyperlink to the X Privacy Center led to a blog post summarizing the changes, including the changes to the forum selection clause. *Id.* at Appx. 132, ¶ 18, n.2; Supplemental Declaration of Megan Scolari in Support of Defendants' Motion to Transfer this Action from N.D. Cal. to N.D. Tex. at Appx. 262-63, ¶¶ 6-8.

Plaintiffs also allege that they paid for developer accounts. *See* SAC ¶¶ 8, 53. As such, they are bound by X's Developer Agreement. Since October 11, 2024, X's Developer Agreement contained the following mandatory forum selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> All disputes related to this Agreement, including any disputes, claims, or controversies arising out of or relating to this Agreement, the marketing of Licensed Material, and/or [the user's] participation in the Licensed Material, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

Scolari Decl. at Appx. 135, ¶ 31.  The forum selection clause and Texas choice of law provisions were included in the most recent, updated versions to the Developer Agreement on June 5, 2025.  *See* Scolari Decl., Ex. 5 at Appx. 177-78.

The forum selection clauses and the choice of law provisions in the Relevant Agreements were in effect throughout the time of the alleged wrongdoing in the Complaint (which allegedly occurred between early 2025 and August 2025), at the time when Plaintiffs brought this lawsuit, and remain in effect to this day.

### C.  Procedural History

Plaintiffs initiated this action on August 27, 2025, in the Northern District of California, naming X Corp. as the sole defendant, and listing X.AI LLC and X.AI Corp. as relevant non-parties.  Complaint at Appx. 8-9, ¶¶ 19, 22.  On September 9, 2025, a full two weeks before Plaintiffs filed their Amended Complaint on September 23, counsel for Defendants contacted Plaintiffs' counsel to inform them of the mandatory forum selection clauses in the Terms, and to seek Plaintiffs' position on whether they would agree to transfer this case from the Northern District of California to the Northern District of Texas.  Declaration of Joel Kurtzberg in Support of Defendants' Motion to Transfer this Action from N.D. Cal. to N.D. Tex.., Ex. 2 (Sept. 9, 2025 Email from Joel Kurtzberg to Plaintiffs' Counsel) at Appx. 201-02.  On September 23, 2025, Plaintiffs filed their First Amended Complaint, which added X.AI LLC and X.AI Corp. as defendants.  FAC at Appx. 43-44, ¶¶ 21-23.  When they filed their First Amended Complaint, Plaintiffs were on actual notice of the X User Terms and Developer Terms of Service and the agreements' specific, mandatory choice of forum clauses.  They chose to file in California anyway.

Defendants moved to transfer to the Northern District of Texas pursuant to the terms of the agreements on October 1, 2025, and Plaintiffs opposed Defendants' motion on October 15, 2025. Judge Araceli Martínez-Olguín ordered the transfer of this case from the Northern District of

California to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) on October 27, 2025. Plaintiffs now move to transfer this case back to the Northern District of California, despite Judge Martínez-Olguín's findings that the forum selection clauses in the agreements were valid and enforceable and despite her rejection of the very arguments Plaintiffs attempt to relitigate here.

## ARGUMENT

## II.    THE TRANSFER ORDER IS ENTITLED TO SIGNIFICANT DEFERENCE UNDER THE LAW OF THE CASE DOCTRINE

Fifth Circuit law is clear that "the decision of a transferor court [to transfer a case] should not be reviewed again by the transferee court." *In re Cragar*, 706 F.2d at 505. Rather, when a "motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'" *Id.* (quoting *Koenig*, 290 F.2d at 73 n.11); *see also Odem* v. *Centex Homes, Inc.* 2010 WL 2382305, at *1 (N.D. Tex. May 19, 2020)*, report and recommendation adopted sub nom. Odem* v. *Centex Homes*, 2010 WL 2367332 (N.D. Tex. June 8, 2010) ("The Fifth Circuit Court of Appeals requires the 'most impelling and unusual circumstances' or a 'manifestly erroneous transfer order' to overcome the law of the case doctrine.") (quoting *Crager*, 706 F.2d at 505).

In finding that granting retransfer amounted to an abuse of discretion in *Cragar*, the Fifth Circuit further explained the heightened importance of the law of the case doctrine in the context of transfer motions: "Failure to abide by the original transfer order contains the additional potential mischief of tossing cases back and forth to the detriment of an adjudication of the underlying merits of the case and respect due sister courts." *Id.* Accordingly, courts within this Circuit routinely rely on the law of the case doctrine when rejecting motions to retransfer cases. *See Collier* v.

*Burnes*, 2022 WL 562897, at *2 (N.D. Tex., Feb. 24, 2022) ("Federal Courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts. . . .  Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end.") (internal citations omitted); *Romanowski* v. *Trans Union, LLC*, 2022 WL 581810, *2 (N.D. Tex. Feb. 24, 2022) ("[T]he Pennsylvania court specifically considered the issue of venue and determined that because the plaintiff's claims arose out of a settlement agreement containing a forum selection clause, this district was the appropriate venue.  It also considered the non-party defendants' agreement to the transfer.  The decision to transfer the case here was plausible."); *Zamber*, 2020 WL 3163037, at *5 (explaining that "this Court will not revisit the issue of transfer unless it finds that impelling and unusual circumstances for retransfer exist or that the transfer order was manifestly erroneous," and denying motion to retransfer where the party seeking to retransfer had "not identified any post-transfer events that would frustrate the original purpose of the transfer" or "established that the transfer order was manifestly erroneous").

Impelling and unusual circumstances arise when "unanticipatable post-transfer events frustrate the original purpose for transfer."  *Zamber*, 2020 WL 3163037, at *5 (quoting *In re Cragar*, 706 F.2d at 505).  Plaintiffs identify no such circumstances here; nor could they, as the Transfer Order was issued by Judge Martínez-Olguín just 17 days ago.  Moreover, "previously made arguments" repeated in a motion to retransfer "do not present an unforeseen event which frustrates the purposes of the transfer."  *Sanders* v. *City of San Angelo*, 2006 WL 8438769, at *1 (N.D. Tex. Dec. 5, 2006).

Unable to meet  this stringent test, Plaintiffs largely ignore the Transfer Order, suggesting that this Court should decide the issue anew.  Controlling precedent, however, makes clear that in this context the policies against retransfer are at their peak:  "The policies supporting the [law of

the case] doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson* v. *Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988); *see also In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009) (noting that "courts should use the law of the case doctrine to determine whether to revisit a [transfer] decision" and should "rarely reverse"); *In re Cragar*, 706 F.2d at 505 (citation omitted) (explaining that "the decision of a transferor court should not be reviewed again by the transferee court"). Accordingly, "[u]nder law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Christianson*, 486 U.S. at 819. To justify departure from this rule, Plaintiffs must show that "the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (citation omitted). Thus, it is not enough for Plaintiffs to show that the Transfer Order was "maybe or probably wrong"; instead, they must establish that it was "dead wrong," and "would 'work a manifest injustice'" if not reconsidered. *Deutsche Bank National Trust Co.*, 902 F.3d at 551 (citation omitted). As explained below, Plaintiffs' motion falls far short of making either showing.

## III.    THE TRANSFER ORDER WAS NOT CLEARLY ERRONEOUS

Plaintiffs' Motion principally relies on two of the same arguments that were considered and rejected by the transferor court: (i) the mandatory forum selection clauses in the agreements between X and Plaintiffs, which designate venue in the Northern District of Texas, should be set aside because X's principal place of business is in Bastrop, Texas, which is in the Western District of Texas, not the Northern District and (ii) that by adding the X.AI Defendants in their First Amended Complaint, which was filed after Plaintiffs were put on notice that X intended to transfer this case, Plaintiffs can avoid enforcement of the mandatory forum selection clauses in the agreements between Plaintiffs and X. Relying on those two arguments, Plaintiffs also erroneously

suggest that the Court can and should consider both the private and public interest factors set forth in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008), in evaluating whether to retransfer this case to the Northern District of California. The Transfer Order, however, considered and properly rejected each of those positions for reasons that Plaintiffs' Motion fails to show amount to manifest error.

Tellingly, Plaintiffs' Motion refers to the Transfer Order only twice, stating that the "Northern District of California quickly granted Defendants' motion, having taken the forum selection clause at face value apparently without considering Plaintiffs' unrefuted evidence of X's forum shopping," Mot. at 1, and that the "California court considered . . . over Plaintiffs' objections" a declaration from a Texas-based declarant. *Id.* at 4. Plaintiffs do not otherwise attempt to engage with the Transfer Order's reasoning, let alone offer an explanation as to how the Northern District of California's decision reflects the sort of manifest error that Fifth Circuit law requires Plaintiffs show to warrant departure from the law of the case doctrine.

### A. The Transferor Court Did Not Commit Manifest Error by Concluding That Plaintiffs Had Not Rebutted the Presumptive Validity of The Forum Selection Clauses

As Plaintiffs' Motion concedes, Mot. at 20, federal courts are expected to "apply a 'strong presumption' in favor of enforcing mandatory forum-selection clauses." *Noble House, L.L.C.* v. *Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 248 (5th Cir. 2023). Thus, "[a]ccording to federal law, 'such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Wright* v. *Nexus RV, LLC*, 2020 WL 3440583, at *2 (N.D. Tex. June 23, 2020) (Pittman, J.) (citation omitted). As the Transfer Order explained, based on the Ninth Circuit's reading of the Supreme Court's guidance in *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1 (1972), to overcome this presumption:

[A] plaintiff must make "a strong showing that: (1) the clause is invalid due to

11

> 'fraud or overreaching' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.

Transfer Order at Appx. 294-95 (citing and quoting *Sun* v. *Advanced China HealthCare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018)). This Court, following, the Fifth Circuit's interpretation of similar principles considers the following four factors:

> [A] list of four factors to determine whether a forum selection clause may be considered unreasonable: (1) whether the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) whether the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) whether the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) whether enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Wright*, 2020 WL 3440583, at *2. (quoting *Haynsworth* v. *The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997).[1] And the law of both Circuits recognizes that the party resisting enforcement on any one of "these grounds bears a 'heavy burden of proof.'" *Haynsworth*, 121 F.3d at 963 (citation omitted); *see also Sun*, 901 F.3d at 1093. Citing the "heavy burden" Plaintiffs were required to carry, the Transfer Order concluded that Plaintiffs failed to make the required showing. *See* Transfer Order at Appx. 297-98.

Plaintiffs' Motion challenges the validity of the mandatory forum selection clauses on three of the same exact grounds that Plaintiffs unsuccessfully raised in their attempt to oppose transfer from the Northern District of California to this Court, including that enforcing the forum selection

---

[1] While the Fifth and Ninth Circuit consider a different number of factors, the law in the two circuits is in accord, as the Ninth Circuit treats the second and third factors of the Fifth Circuit's test together as part of the second factor. *See Sun*, 901 F.3d at 1091-92 (discussing the Fifth Circuit's approach, and explaining that Ninth Circuit precedent "is in accord with the Fifth Circuit").

clause would be unreasonable because: (i) X is headquartered in the Western District of Texas, whereas the agreements designate the Northern District of Texas as the chosen forum (*compare* Mot. at 20-23, *with* Plaintiffs' Opposition to Motion to Transfer ("Pls. Transfer Opp.") at Appx. 222-23, 226-27); (ii) doing so "would, for all practical purposes, deprive Plaintiffs of their day in court" because it "would impose significant financial and logistical burdens on Plaintiffs" (*compare* Mot. at 23, *with* Pls. Transfer Opp. at Appx. 227-28); and (iii) it would "deprive Plaintiffs of remedies exclusive to California and contravene[] California's strong public policy favoring consumer and business protections (*compare* Mot. at 23-24, *with* Pls. Transfer Opp. at Appx. 228-30). *See* Transfer Order at Appx. 297-298 (holding that "Plaintiffs have not established that the forum selection clauses are invalid or unenforceable" where Plaintiffs failed to "make a 'strong showing' of either (i) fraud or overreaching, (ii) contravention of a strong public policy, or (iii) such 'grave difficult[y] and inconvenien[ce]' in having the trial in the contracted forum that they would, 'for all practical purposes be deprived of [their] day in court.'").  As was true before, Plaintiffs' challenges to the validity of the forum selection clauses are insufficient to carry Plaintiffs' "heavy burden" of making a strong showing that enforcement of the forum selection clause would be unreasonable under the circumstances.

As to their challenge regarding the validity of the forum selection clause, Plaintiffs argue that the four unreasonableness factors recognized by the Fifth Circuit in *Haynsworth* "are not exclusive," Mot. at 21 (citing *Haynsworth*, 121 F.3d at 963), and that this Court should also find that "unreasonableness may exist if the chosen forum lacks a reasonable relationship to the transaction." *Id*.  However, nowhere does the Fifth Circuit's decision in *Haynsworth* suggest that those four factors are "not exclusive," as Plaintiffs contend, and Plaintiffs identify no Fifth Circuit authority suggesting that the court has adopted additional factors, beyond the four that are

frequently cited in the Fifth Circuit's numerous decisions interpreting *M/S Bremen* and its progeny. Regardless, even if the Court were to adopt Plaintiffs' proposed fifth unreasonableness factor regarding the relationship between the chosen forum and the transaction, Plaintiffs' argument still would not warrant a deviation from the law of the case.

And the chosen forum ***does*** have a reasonable relationship to the transaction:  X is a Texas-headquartered company, and its selection of a forum in its home state can hardly be said to be random.  *See Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585, 595 (1991) (upholding Florida forum selection clause because any "suggestion of such a bad-faith motive is belied" by the fact that "Petitioner has its principal place of business in Florida").  And, as X explained in responding this argument before the transferor court, there are numerous additional good-faith bases for X's selection of this Court as its chosen forum rather than the Western District of Texas, including that this Court typically resolves civil litigation faster than the Western District of Texas,[2] and that this Court has quickly and significantly outpaced the Western District of Texas in terms of developing a unique familiarity with the sorts of disputes that technology—and in particular AI—companies often face.  *See* Supplemental Declaration of Joel Kurtzberg in Support of Motion to Transfer this Action from N.D. Cal. to N.D. Tex. ("Supp. Kurtzberg Decl.") at Appx. 270-71, ¶¶ 3-4; Supp. Kurtzberg Decl. Ex. 3 at Appx. 275-78; Supp. Kurtzberg Decl. Ex. 4 at Appx. 281-87 (collectively providing search results from CourtLink showing that as of October 22, 2025, more than 1,000 dockets from the Northern District of Texas (351 listed as active), and only 10 in the Western District of Texas (6 listed as active) hit on the phrase "artificial intelligence").  Moreover, while X

---

[2] *See* Defendants' Reply Memorandum in Support of Motion to Transfer ("Defs. Reply Mot. Transfer") at Appx. 249 n.1, Table C-5 – U.S. District Courts-Civil Statistical Tables for the Federal Judiciary (June 30, 2025), https://www.uscourts.gov/data-news/data-tables/2025/06/30/statistical-tables-federal-judiciary/c-5.

maintains that its relationship with Texas more broadly is enough to show a reasonable relationship between the forum and X's Terms, X's connection to this District more specifically has grown, and is expected to continue to grow, as X and X.AI LLC have recently increased their physical footprint in this District by signing a lease for office space within Fort Worth, Texas, which will serve as an office for both X.AI and X Corp. employees, of which there are already 19 in the District.  *See* Declaration of Nicole Hollander ("Hollander Decl."), dated Nov. 13, 2025, at Appx. 302, ¶¶ 4-5.  Plaintiffs' Motion fails to identify a single court that has found a forum selection clause designating a court within a party's home state to "lack a reasonable relationship."  Plaintiffs also again fail to offer any suggestion that being forced to litigate in the Northern District of Texas, rather than the Western District, would present any increased burden on Plaintiffs.  To the contrary, the Dallas-Fort Worth metropolitan area is an airport hub, making it more convenient and easily accessible to out-of-state parties than the Western District.  Accordingly, Plaintiffs fail to establish the sort of manifest error that would warrant revisiting the Transfer Order's refusal to find invalidity on this basis.

Plaintiffs' two last-ditch attempts to press the same exact arguments that the transferor court easily disposed of also do not come close to establishing manifest error by the Northern District of California.  First, with respect to Plaintiffs' complaint that enforcement of the forum selection clause would supposedly "deprive Plaintiffs of their day in court," the Transfer Order correctly explained that "Plaintiffs do not and cannot plausibly claim that trial in the Northern District of Texas will be so gravely difficult and inconvenient that they will be deprived of their day in court."  Transfer Order at Appx. 299.  Plaintiffs' Motion does nothing more than restate the same conclusory assertions that the Transfer Order found unconvincing.  *See* Mot. at 23.  The same is true of Plaintiffs' attempt to have this Court reconsider the Northern District of California's

analysis of Plaintiffs' arguments based on the forum selection clause's supposed contravention of California's public policies.  Mot. at 23-24.  As to this factor, the Transfer Order held that "Plaintiffs' concerns over losing access to California causes of action are of no relevance because they do not relate to the question of forum but the separate issue of choice of law."  Transfer Order at Appx. 298.  Moreover, as the Fifth Circuit has itself explained, "the fact that *certain types of remedies* are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek *some* relief."  *Weber* v. *PACT XPP Technologies, AG*, 811 F.3d 758, 774 (5th Cir. 2016); *see also Hartash Construction* v. *Drury Inns, Inc.*, 252 F.3d 436, at *2 (5th Cir. 2001) (rejecting plaintiff's arguments that "because the witnesses and relevant evidence remain in Louisiana, its ability to present its case in Missouri would be 'greatly impar[ed]'" and explaining that contrary to plaintiff's "assertion, the Supreme Court, since *Bremen,* has found that requiring a citizen of one state to travel to another state may cause inconvenience, but does not automatically render a forum-selection clause fundamentally unfair").  Having now filed a new Complaint setting forth four new claims brought under Texas law, Plaintiffs cannot seriously contend that it was manifest error for the Northern District of California to find that Plaintiffs had not carried their heavy burden of showing enforcement of the forum selection would be unreasonable or unjust.

Plaintiffs' last gambit—arguing for the first time without any legal support that the forum selection clause is "fundamentally unreasonable because it lacks mutuality"—fares no better.  Mot. at 24.  As a threshold matter, having not raised this argument in opposition to Defendants' motion to transfer from the Northern District of California, Plaintiffs have waived this argument and should not be allowed to raise it for the first time in their motion to retransfer, which essentially asks this court to reconsider the transferor court's findings.  *See Vine* v. *PLS Financial Services,*

16

*Inc.*, 689 F. App'x 800, 803 (5th Cir. 2017) (affirming denied motion to enforce arbitration clause in loan agreement because the party "waived this issue by raising it for the first time in its motion to reconsider"); *see also HSM Holdings, LLC* v. *Mantu I.M. Mobile Ltd*., 2021 WL 3115486, at *4 (S.D.N.Y. July 21, 2021) ("Plaintiff argues for a rule of law that would excuse a party's failure to make an available (and allegedly here conclusive) argument in the transferor court only to make the argument for the first time after the transferor court has analyzed and ruled on the motion to transfer.  That rule of law ***would frustrate the purposes of the law of the case doctrine*** just as surely as the rule of law rejected in *U.S. Bank National Association*, under which the transferee court could reconsider the transferor court's explicit jurisdictional holding.") (emphasis added). Even were the Court to allow Plaintiffs to raise this argument for the first time here, Plaintiffs offer no legal support for it, which is unsurprising since Texas courts have soundly rejected this sort of asymmetry-based challenge.  *In re Lyon Financial Services, Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (rejecting plaintiff's argument that "permitting Lyon to litigate its claims in either Texas or Pennsylvania while limiting MNI to seeking relief in Pennsylvania," rendered the clause unconscionable).

### B.  The Transferor Court Did Not Commit Manifest Error by Holding the Forum Selection Clause Applied to Plaintiffs' Claims Against the X.AI Defendants

The Transfer Order held that Plaintiffs' claims against the X.AI Defendants were also subject to transfer because they "fall within the scope of the X User Terms because Plaintiffs allege the X.AI Defendants engaged in the same scheme as X—i.e., X and X.AI removed Plaintiffs from X and pretextually accuse them of violating X's terms and conditions for the purpose of reducing competition with X.AI's product, Grok."  Transfer Order at Appx. 297.  As with the rest of the Transfer Order, Plaintiffs' Motion does not even attempt to engage with the Transfer Order's reasoning, let alone explain how it is manifestly erroneous, and as a result Plaintiffs cannot

17

overcome the high burden imposed by the law of the case doctrine.  *See supra* Part I.  Plaintiffs'

attempt to reargue this issue anew under Fifth Circuit law ignores clear Fifth Circuit law that

weighs against allowing the sort of strategic avoidance of forum selection clauses that Plaintiffs'

addition of the X.AI Defendants ***after being informed that X intended to seek transfer on the***

***basis of the forum selection clause***, *see supra* Part I.C, would accomplish.

Plaintiffs' objection to the application of the closely related doctrine is largely premised on

their assertion that "Texas lacks personal jurisdiction over Plaintiff Walters," Mot. at 19, and that

"Defendant X.AI LLC is not registered to do business in Texas," Mot. at 20, and therefore,

according to Plaintiffs, "X.AI LLC cannot be sued in Texas," Mot. at 7.  However, as Defendants

explained in their briefing to the Northern District of California, when considering whether an

action could have been brought in a transferee court, courts "only consider whether the transferee

court would have had 'subject matter jurisdiction over the claims and personal jurisdiction over

the ***defendant***.'" Defs. Reply Mot. Transfer at Appx. 254 (citing *Doe* v. *Epic Games, Inc.*, 435 F.

Supp. 3d 1024, 1040 (N.D. Cal. 2020).  Moreover, Defendant X.AI LLC waived any objection as

to personal jurisdiction in the Northern District of Texas, rendering Plaintiffs' argument purely

academic.   And the record is clear: X.AI LLC "does business as X.AI throughout Texas,"

(Declaration of Sydney Carrick at Appx. 267, ¶ 3), including in this District.  *See* Hollander Decl.

at Appx. 302, ¶¶ 4-5.  As Defendants explained in the prior transfer briefing, "X.AI LLC is a

limited liability company and wholly owned subsidiary of X.AI Corp., Declaration of Sydney

Carrick [at Appx. 267, ¶ 3], which Plaintiffs concede is registered to do business in Texas, *see*

*generally,* [Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Opposition to Motion

to Transfer, Ex. 2 at Appx. 237]," (Defs. Reply Mot. Transfer at Appx. 255), and Plaintiffs lump

the two entities together as "X.AI" throughout their newly amended complaint (SAC at 1).

Plaintiffs are also wrong to suggest that Fifth Circuit law on the closely related doctrine would lead to a different result.  As explained in *Franklink Inc.*, v. *BACE Services, Inc.*, 50 F.4th 432, 438-39 (5th Cir. 2022), when considering whether non-signatories are closely related, courts should consider at least the following factors: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly."  *Id.* at 442. Here, Plaintiffs' own allegations make clear that at least the first three elements directly apply. First, as Plaintiffs' Complaint acknowledges, Defendants are all corporate affiliates that share a common owner.  SAC ¶¶ 20-23.  Second, Plaintiffs can hardly dispute the direct benefits element, or that the X.AI Defendants had knowledge of X's Terms, where the crux of Plaintiffs' allegations is that Defendants conspired to falsely accuse Plaintiffs of violating X's terms and conditions to "summarily deplatform[] [their] competitor Eliza clearing the way for its and X.AI's copycat product Ani" before then also using the "false pretenses of evaluating Plaintiffs for compliance purposes and false promises of reactivation."  *Id.* at ¶¶ 10-14, 71-76, 149.

The Fifth Circuit's decision in *Bridas S.A.P.I.C.* v. *Government of Turkmenistan*, 345 F.3d 347 (2003), which Plaintiffs themselves cite, further explains why the broader equitable principles that underpin the closely related doctrine, and the inextricable intertwinement doctrine, are directly applicable here.  Discussing its earlier decision in *Grigson* v. *Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000), the Panel in *Bridas* explained that, "[i]n *Grigson*, we estopped a *signatory* plaintiff from relying upon the defendants' status as a nonsignatory to prevent the *defendants* from compelling arbitration under the agreement . . . because to do otherwise would permit the signatory plaintiff to 'have it both ways.'"  *Bridas*, 345 F.3d at 360.  The same principles apply here, where Plaintiffs are signatories to X's Terms, and the crux of their claims is that those

19

terms were used to the Defendants' collective benefit and their detriment. This is especially true where Plaintiffs' original complaint listed the X.AI Defendants as "Relevant Non-Parties," rather than Defendants, and Plaintiffs only added the X.AI Defendants in the face of an impending transfer motion.

The Fifth Circuit's decision in *In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014), also weighs strongly against Plaintiffs' suggestion that the late addition of the X.AI Defendants supports retransfer of this case. In *Rolls Royce*, the Fifth Circuit addressed the question of what a district court should do "when some, but not all, litigants are subject to a forum selection clause, and one of the parties to the clause files a motion to sever and transfer its claims to the forum chosen in the contract." *Id.* at 673. In doing so, it explained that "pursuant to *Atlantic Marine*, the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum." *Id.* at 681. Accordingly, only the private interest factors of those parties who have not consented to transfer—either by way of seeking transfer to the forum or contractually agreeing to litigate in the forum—can be considered. And the Fifth Circuit also expressed direct skepticism with respect to the strategic addition of parties in an effort to avoid transfer. *Id.* at 683 ("Nor do we suggest that merely joining a party to the suit will defeat a severance motion pursuant to a valid forum contract—certainly not when joined in a transparent effort to defeat the transfer.").

### C. The Transferor Court Did Not Commit Manifest Error in Applying the § 1404(a) Factors

Plaintiffs' arguments as to the *Volkswagen* factors simply restate the same convenience and case-management assertions Plaintiffs advanced unsuccessfully in the Northern District of California. *Compare* Mot. at 9-18, *with* Pls. Transfer Opp. at Appx. 222, 226-30; *see also* Transfer Order at Appx. 294-99. The transferor court already held that because Plaintiffs did not carry their

20

"heavy burden" to invalidate the clauses on grounds of fraud or overreach, contravention of a strong public policy, or grave inconvenience, the court was obligated to ignore Plaintiffs' arguments as to the private-interest factors and instead "deem the private-interest factors to weigh entirely in favor of the preselected forum.'" Transfer Order at Appx. 294. That ruling is dispositive here, as Plaintiffs do not (and cannot) explain how that conclusion reflects manifest error. *See supra* Section II. And, even if this Court were free to redo the transferor court's analysis, *Atlantic Marine* still controls, rendering Plaintiffs' arguments as to the various private-interest factors, Mot. at 10-14, legally irrelevant. *See Atlantic Marine Construction Co., Inc.* v. *U.S. District Court for the Western District of Texas*, 571 U.S. 49, 62-66 (2013). As this Court itself has explained:

> A district court's analysis of a motion to transfer under Section 1404(a) is adjusted in three ways when there is a valid forum-selection clause. *First*, the party resisting the forum-selection clause bears the burden of establishing that transfer to the forum is unwarranted and plaintiff's choice of forum is given "no weight." *Second*, a district court should not consider arguments about the parties' private interests when considering a motion to transfer based on a forum-selection clause and must "deem the private-interest factors to weigh entirely in favor of the preselected forum." A district court may still consider public-interest factors, but "those factors will rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Third*, a transfer of venue will not carry with it the original venue's choice-of-law rules when a party bound by a valid forum-selection clause "flouts its contractual obligation and files suit in a different forum[.]"

*Wright*, 2020 WL 3440583, at *4 (citing and quoting *Atlantic Marine*, 571 U.S. at 63-64); *see also Weber*, 811 F.3d at 767-68 (similar).

### i. The Public-Interest Factors Favor Denying Retransfer.

The public-interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Planned Parenthood Federation*

*of America, Inc.,* 52 F.4th 625, 630 (5th Cir. 2022).  Plaintiffs' Motion ignores the third and fourth factors, suggests that the first factor "may weigh in favor of transfer or be neutral," and argues that the local interest factor favors transfer based on Plaintiffs' assertion that the people in the Bay Area have a greater interest in promoting competition in the AI space than do the people in Fort Worth.  Mot. at 16-18.  Plaintiffs' arguments do not come close to carrying Plaintiffs' burden of showing that the public-interest factors "overwhelmingly disfavor" keeping this case in the contractually designated forum, *Atlantic Marine*, 571 U.S. at 67, or even that there is "good cause" to transfer this case back to the Northern District of California.  *See In re Planned Parenthood*, 52 F.4th at 629.  Rather, when considered in full, these four factors weigh strongly against retransfer.

   ***Familiarity with the governing law and conflict-of-law issues.***  Plaintiffs' claims include a mix of federal and state claims, which the current complaint states under both Texas and California law.  However, as X's Terms include a Texas choice of law provision, Scolari Decl., Ex. 1 at Appx. 147, this Court will be more familiar with the law that is likely to govern the state law claims that Plaintiffs allege.  And, even if any of Plaintiffs' California law claims do proceed, Plaintiffs do not argue that any of those claims present the sort of "exceptionally arcane features" that "are likely to defy comprehension" by a judge sitting elsewhere.  *In re TikTok, Inc.*, 85 F.4th 352, 365 (5th Cir. 2023) (citation omitted)

   ***Administrative considerations flowing from court congestion.***  Court congestion does not justify retransfer back to the Northern District of California.  Plaintiffs' reliance on Fifth Circuit decisions holding that district courts are better situated to consider the question of court congestion than appellate courts does not provide a basis for this Court to ignore that statistically, the Northern District of California has a higher overall civil caseload than this District, and that civil cases there have a significantly longer median time to resolution than they do in this District.  Mot. at 15

(citing *In re Clarke*, 94 F. 4th 502, 510 (5th Cir. 2024) and *TikTok*, 85 F.4th at 363 n.12).  As reflected in the statistics that Defendants cited in their reply brief in support of their original motion to transfer, the median time to resolution in the Northern District of California is nearly four times as long as in this District.  *See* Defs. Reply Mot. Transfer at Appx. 249 (listing the median time to resolution in the Northern District of California as 20.5 months, compared to the ***5.8 months*** in the Northern District of Texas).

      ***Considerations of Local Interests.***  Plaintiffs' arguments that residents of the Bay Area have a greater interest in this case than do the residents of this District is without basis.  As the Fifth Circuit has explained, "[n]ot all cases are 'localized'" such that citizens of one District have any more of an interest in having the case decided in their courts than those of other Districts.  *In re Chamber of Commerce of United States of America*, 105 F.4th 297, 308 (5th Cir. 2024).  Plaintiffs' arguments essentially concede this point by explaining that the thrust of their complaint is "the antitrust and anticompetitive impacts" they claim resulted from the alleged misconduct.  Mot. at 18.  As these alleged impacts would have been felt both in California and in Texas, this factor is neutral at best.

      **ii.  The Private-Interest Factors Do Not Support Retransfer.**

      The private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Planned Parenthood*, 52 F.4th at 630.  However, for the reasons explained above, the law of the case doctrine and *Atlantic Marine* render Plaintiffs' arguments as to these factors legally irrelevant.  Regardless, Plaintiffs' private-factor theories are not just irrelevant, they are factually overstated:  most evidence is electronic and equally accessible in Texas, and any non-party witnesses can be deposed nationwide.  *See* Fed. R. Civ. P. 45(c); *In re Apple Inc.*, 979 F.3d

1332, 1340-41 (Fed. Cir. 2020) (applying Fifth Circuit transfer law).

## **CONCLUSION**

Defendants respectfully submit that Plaintiffs' motion to retransfer be denied for the reasons stated above.

Dated:  November 13, 2025

/s/ Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
Joel Kurtzberg (admitted *pro hac vice*)
John MacGregor (*pro hac vice* pending)
32 Old Slip
New York, NY 10005
Phone: 212.701.3210
Facsimile: 212.269.5420
jkurtzberg@cahill.com
jmacgregor@cahill.com

Noah M. Schottenstein, Texas Bar No. 24087072
Christopher D. Hilton, Texas Bar No. 24087727
Michael Abrams, Texas Bar No. 24087072
Stone Hilton PLLC
301 Commerce Street
Bank of America Tower
Suite 2360
Fort Worth, TX 76102
Telephone: 737.465.3897
noah@stonehilton.com
chris@stonehilton.com

## CERTIFICATE OF SERVICE

I certify that on November 13, 2025, I caused the foregoing document to be electronically transmitted to the Clerk of the Court using the ECF system for filing. A notice of electronic filing was transmitted to all ECF registrants of record.

/s/ Joel Kurtzberg
Joel Kurtzberg